# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

THOMAS MICHAEL TAFFE and
DEVONY LOUISE LEHNER,

              Debtors.

Case No. A13-00199-GS
Chapter 11

## MEMORANDUM ON MOTION FOR STAY PENDING APPEAL

The debtors have filed a timely *Notice of Appeal Regarding Order to Grant Relief From Stay* (Docket No. 60).[1] They have also filed an *Amended Motion for Stay Pending Appeal*, (Docket No. 64).[2] Secured creditor First National Bank Alaska ("FNBA") filed an *Opposition to Motion to Stay* on August 29, 2013 (Docket No. 65). Having reviewed both the *Motion* and *Opposition*, and for the reasons stated below, the *Motion* will be denied.

Because the factual background for this case is detailed in this court's *Memorandum on Motion for Relief From Stay* (Docket No. 44), it will be briefly summarized here. The debtors owned real property in Homer, Alaska, known as Stream Hill Park. Stream Hill Park was envisioned as a planned community with 72 residential lots and several common interest ownership tracts dedicated to equestrian, dog park, hiking, and other uses. FNBA funded the project through various phases, and after its loan went into default, it scheduled a nonjudicial

---

[1] *See* Fed. R. Bankr. P. 8005.

[2] The debtors' initial *Motion for Stay Pending Appeal* (Docket No. 59) did not bear an original signature.

foreclosure sale for the property.³ The debtors express-mailed their chapter 11 bankruptcy petition to the court one day prior to the scheduled sale. The petition was not delivered to the court until shortly after the foreclosure sale had been conducted. FNBA purchased the property through an offset bid, but the debtor's bankruptcy petition was docketed before a trustee's deed to FNBA could be executed. FNBA sought, and was granted, relief from stay for cause under 11 U.S.C. § 362(d)(1), so that it could cause the execution and delivery of a trustee's deed of sale and otherwise enforce its security interest in the Homer property. The debtors filed their notice of appeal after unsuccessfully seeking reconsideration from this court.

The debtors contend a stay is appropriate because their appeal raises "legitimate, substantial questions of law," such as whether this court's order granting relief from stay was "improper because it exceeded the scope of a [relief from stay] hearing," whether the court's interpretation of AS 34.20.080(i) was overly broad and inconsistent with other statutory provisions, whether the court misread *In re Macavilca,* 7 ABR 500 (Bankr. D. Alaska Apr. 7, 2004), whether the trustee at the foreclosure sale was impartial, and whether the foreclosure sale was void by automatic operation of law.⁴ They say loss of the Homer property would cause them permanent, overwhelming injury, and would injure their unsecured creditors in a like manner. Finally, they contend that it is in the interest of the local community and the

---

³ There is no dispute that the debtors received notice of the foreclosure sale. Nor is there any dispute that the debtors were in default on the note that was secured by FNBA's deed of trust against the Homer real property.

⁴ *Am. Mot. for Stay of Order Pending Appeal*, filed Aug. 29, 2013 (Docket No. 64), at 2-3.

2

existing owners of the individual lots within the Homer property to have the stay remain in effect, so that the Stream Hill Park project survives and retains it value.

FNBA urges this court to deny the *Motion* or, alternatively, to require the debtors to post a $150,000.00 supersedeas bond to cover the costs, expenses and interest that would accrue during the pendency of an appeal. It argues that the debtors cannot prevail on the merits of their appeal. It notes that the loan matured almost two years ago, on October 20, 2011, that the debtors have not made any payments on the note in the interim, and have no ability to cure or make payments on the debt. FNBA also contends the property alone cannot adequately protect its security interest.[5] It counters the debtors' arguments of irreparable harm by pointing out how it will be affected if the stay remains in effect. Interest continues to accrue on its note at the rate of $424.70 per day, or more than $12,000.00 per month, and it will be required to act as a real estate holding company, paying all taxes and expenses for the Homer property, while the appeal is in progress. On the other hand, if the stay is lifted, FNBA will be able to effect the transfer of title to the property and the debtors will have shed

---

[5] The value of the property is contested. The debtors' Schedule A valued Stream Hill Park at $2,821,300 (Schedule A, Docket No. 13 at 3). FNBA submitted a January, 2013 appraisal which indicated the property was worth $2.1 million, based upon the bulk sale of all the individual lots. However, this appraisal also provides higher valuations if the remaining lots in the project are sold individually. Based upon the higher valuations projected from individual sales, the total valuation of FNBA's collateral would be $2,940,000. The record further reflects that the debtors have not sold a lot in the project or made a payment on the FNBA note since October, 2011, when Lot 39 was sold for 75% of list price (*See* Statement of Financial Affairs, Docket No. 46 at 16-17). An offer to buy 3 lots as a group for a 50% reduction in list price was made in October of 2012, but was not accepted due to the high discount. (*See* Debtors' Ans. to Reply to Obj. to Mot. for Relief From Stay, Docket No. 25 at 6; Debtors' Ex. 14). Because relief from stay was granted for cause under 11 U.S.C. § 362(d)(1), on account of the prepetition foreclosure, the court did not determine whether there was equity in the property under § 362(d)(2). However, considering the length of time since a successful lot sale and the fact that no payments have been made on the FNBA loan since 2011, relief from stay might also have been granted under § 362(d)(1) due to lack of adequate protection.

debt that they cannot repay. FNBA also challenges the debtors' arguments as to public interest, noting that they failed to form a proper owners association or convey the common elements in the property to the homeowner's association as they had promised. FNBA, on the other hand, states its intent to take steps to assure that this occurs.

A.     **Standard for Granting a Stay Pending Appeal**

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'"[6] The court is guided by the following factors when determining whether to grant a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[7]

The first two factors are the most critical.[8] The debtors bear the burden of showing that the circumstances of this case justify the imposition of a stay pending appeal.[9]

Under the circumstances of this case, I find that the debtors have not satisfied their burden of proof. Courts have looked to various formulations to determine the first factor, but all such formulations "indicate that, 'at a minimum,' a petitioner must show that there is a

---

[6] *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citations omitted).

[7] *Id.* at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[8] *Nken*, 556 U.S. at 434.

[9] *Id.* at 433-34.

4

'substantial case for relief on the merits.'"[10] The debtors correctly note that they need not show that it is more likely than not that they will prevail on appeal.[11] Yet, "it is not enough that the chance of success on the merits is 'better than negligible,' or that there is a 'mere possibility of relief.'"[12] Here, the debtors' chances of success on appeal are slim. Their reliance on the *Macavilca* decision is misplaced, due to the subsequent amendment of the controlling Alaska statute, AS 34.20.080(i).[13] Their disagreement with the court's decision does not constitute a "substantial case for relief on the merits,"[14] and is not a basis for granting the stay.

The court must also consider whether the debtors will be irreparably harmed if a stay is not granted. The debtors say only that absent a stay of the court's *Order*, they will lose the Stream Hill Park project, causing them overwhelming financial damage. This argument assumes that they will irretrievably lose the real property, and that such loss will cause them financial damage. As to the loss of the real property, the debtors continue to press issues

---

[10] *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)).

[11] *Lair,* 697 F.3d at 1204 (citing *Leiva-Perez*, 640 F.3d at 966).

[12] *Id.* (citing *Nken*, 556 U.S. at 434).

[13] This point was addressed in the *Memorandum on Motion for Relief From Stay* (Docket No. 44), at 6-9. Once the foreclosure sale was completed, the debtors held only bare legal title to the Stream Hill Park property. The FNBA deed of trust did not provide a right of redemption. *Id.* at 8 n.32.

[14] *Leiva-Perez*, 640 F.3d at 968; *see also Nemee v. County of Calaveras (In re Nemee),* 2012 WL 8123401 *7 (Bankr. E.D. Cal. Jan. 27, 2012)("Merely asking the court to consider the possibility that another court may reverse is not showing that success on the merits of an appeal is likely.") Moreover, the debtors' suggestion that this court acted improperly in granting a motion for relief from stay is meritless. The bankruptcy court's authority to consider and grant such motions is express under 28 U.S.C. § 1334, 11 U.S.C. § 362(d), and the District Court's *Order of Reference*.

5

such as whether the foreclosure trustee must be impartial, and more generically whether the foreclosure sale was void by automatic operation of state law. This court earlier noted that the debtors may seek full redress of these claims in another context.[15] Such claims were not determined in the relief from stay context. They may still be appropriately, and timely, raised in state court, notwithstanding the debtors' appeal or the *Order Granting Motion for Relief From Stay*. Nor is it apparent that the loss of the real property will cause the debtors the financial damage they suggest, as the non-judicial foreclosure eliminated that personal obligation.[16] While the debtors focus upon the loss of speculative future equity, the reality demonstrates that for the past two years they were unable to pay an outstanding debt in excess of $2 million. Given the existing avenue of redress available in state court, and the speculative nature of the alleged harm, the debtors have not proven irreparable injury is imminent absent a stay.[17]

The third element the court must consider is whether issuance of the stay will substantially injure the other parties interested in the proceeding. The debtors state that absent a stay pending appeal, the unsecured creditors will also suffer overwhelming financial damage. There is no evidence to support this assumption. It is not clear that this bankruptcy will benefit the unsecured creditors. As noted by FNBA, its note matured on October 20,

---

[15] *See Memorandum on Motion For Relief From Stay* (Docket No. 44), at 10-11. Because relief from stay matters are summary proceedings, the debtors' claims regarding FNBA and the foreclosure process were not determined in the context of FNBA's *Motion for Relief From Stay.*

[16] AS 34.20.100.

[17] *See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir. 1991)(the "harm alleged must be both certain and immediate, rather than speculative or theoretical.")

6

2011. As of the petition date, the debtors owed FNBA more than $2.4 million. FNBA's appraisal values the property at $2,130,000, although when the lots are individually valued the total collateral is valued at $2,940,000.[18] The debtors' hope is to require FNBA to wait until they can sell individual lots that have gone unsold since the loan matured two years ago. Yet, the debtors fail to account for the holding costs, including interest and property taxes. Charitably construed, any prospective benefit to the unsecured creditors is speculative at best, while the harm to FNBA is ongoing.

Finally, the court must consider where the public interest lies with regard to a stay of proceedings. Again, the debtors simply conclude that this factor supports their requested relief. They have provided no evidence to suggest how the change in ownership of the property would impact the local community and existing lot owners. In contrast, FNBA has committed to complete certain duties that should have earlier been performed by the debtors, such as the formation of a proper homeowners' association and conveyance of the common elements to Stream Hill Park, that will ensure viability of this project. Balancing the two arguments, and considering that FNBA's loan matured almost two years ago, it appears the public interest would be better served if the Stream Hill Park project was not under the debtors' stewardship.

The debtors have not made a sufficient showing to justify a stay pending appeal. Their continued disagreement with the court's application of AS 34.20.080(i) is not a basis

---

[18] As noted above, valuation is contested and the court did not reach this issue when granting relief from stay under § 362(d)(1) (*See infra*, n.5).

7

for imposing a stay pending appeal.  Their state law claims can be asserted in state court, even pending their bankruptcy and appeal.  There is no clear showing that unsecured creditors will be injured absent a stay, nor have the debtors established that public interest will best be served by granting a stay.  Although FNBA has indicated a stay could be conditioned on the posting of a $150,000.00 supersedeas bond, the debtors lack the ability to do so.  For the foregoing reasons, the debtors' *Amended Motion for Stay Pending Appeal* will be denied.  An order will be entered consistent with this *Memorandum*.

    DATED:  September 5, 2013.

                                        BY THE COURT

                                        /s/ Gary Spraker
                                        GARY SPRAKER
                                        United States Bankruptcy Judge

Serve:  Thomas Taffe, Pro Se Debtor*
         Devony Lehner, Pro Se Debtor
         Bruce Moore, Esq.
         William Courshon, Esq.
         U. S. Trustee

*courtesy copy emailed to Mr. Taffe 9/5/13 - √aam*